**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0058-18T1

IN THE MATTER OF JALEILA
WILSON, DEPARTMENT OF
LAW AND PUBLIC SAFETY.

_____

Argued October 14, 2020 – Decided November 2, 2020

Before Judges Yannotti and Haas.

On appeal from the New Jersey Civil Service Commission, Docket Nos. 2015-2484, 2016-1288 and 2017-3138.

Pauline M.K. Young argued the cause for appellant (McLaughlin & Nardi, LLC, attorneys; Maurice W. McLaughlin and Pauline M.K. Young, on the briefs).

Emily A. Samuels, Deputy Attorney General, argued the cause for respondent New Jersey Department of Law and Public Safety (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Emily A. Samuels, on the brief).

Pamela N. Ullman, Deputy Attorney General, argued the cause for respondent New Jersey Civil Service Commission (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Pamela N. Ullman, on the brief).

PER CURIAM

Jaleila Wilson appeals from three decisions of the Civil Service Commission (CSC): (1) the October 20, 2015 decision on her classification appeal; (2) the February 28, 2017 decision on her reprisal petition; and (3) the July 24, 2018 decision denying her motion for reconsideration. We affirm.

I.

We briefly summarize the pertinent facts. In June 2004, Wilson was appointed as a permanent employee in the Division of Consumer Affairs of the Department of Law and Public Safety (Department). Her position was classified as Auditor 3.

Wilson claims that sometime in November 2012, she "realized" that she was doing the work of an Auditor 2 or Investigator 1. On November 26, 2012, Wilson completed a Position Classification Questionnaire (PCQ) seeking reclassification of her position as either Auditor 2 or Investigator 1 (PCQ-1).

Wilson asserts that her direct supervisor supported her request for reclassification. The Deputy Director of Wilson's agency signed PCQ-1 on December 10, 2012; however, he did not complete the form indicating that he agreed or disagreed with the reclassification request.

In July 2013, Wilson filed a grievance asserting in part that her July 26, 2013 Performance Assessment Review (PAR) did not accurately reflect her principal job duties. In December 2013, Wilson and the Department resolved the grievance. The Department agreed Wilson's performance would only be evaluated based upon "the duties [she was then] performing." Wilson claimed, however, that the Department did not follow through on its agreement to remove out-of-title duties.

In March 2014, the Department submitted Wilson's PCQ-1 to the CSC and recommended that it be disapproved. The Department informed Wilson that effective immediately, her out-of-title duties would have to be removed from her position. It also informed Wilson that a new PCQ would be forwarded to the CSC after her duties were changed.

In July 2014, Wilson filed two grievances seeking an investigation into the status of PCQ-1 and reclassification of her position. In August 2014, the Department submitted the revised PCQ-1 to the CSC. The Department indicated that Wilson had refused to sign the document, and that on February 6, 2014, some of her "higher-level duties" had been removed from her position. Both grievances were settled when the Department advised Wilson that the revised

PCQ-1 had been submitted to the CSC and it was "awaiting a definitive answer from CSC."

In February 2015, the Division of Agency Services (AS) in the CSC issued a decision finding that the preponderance of the duties and responsibilities in Wilson's assigned position were consistent with the title of Auditor 3. Wilson appealed that decision to the CSC.

On July 1, 2015, Wilson filed another PCQ (PCQ-2), claiming her duties had changed and her position should now be classified as an Administrative Analyst 1. On August 25, 2015, the Department forwarded PCQ-2 to the CSC. Wilson claimed the Department improperly delayed in submitting PCQ-2 to rearrange her job duties and removed certain out-of-title duties before its submission to the CSC.

Between August and September 2015, Wilson wrote three letters supplementing her appeal regarding PCQ-1. In the letters, Wilson claimed that the Department falsely stated her out-of-title duties had been removed, and the Department falsified documents indicating she refused to sign the revised PCQ.

Wilson asserted that certain persons in the Department had bullied her, attempted to intimidate her, and threatened to discipline her for failing to

4

perform her duties. She also alleged the Department delayed the processing of her initial PCQ in retaliation for the grievances she previously filed.

Wilson submitted her letters alleging retaliation to the analyst handling the appeal concerning PCQ-1. The analyst informed Wilson that her reprisal complaints had to be made separately. The analyst provided Wilson with a separate docket number for her retaliation claims.

On October 9, 2015, the CSC issued its decision on the PCQ-1 finding that Wilson's position had been misclassified as an Auditor 3. The CSC found the position should be reclassified as Investigator 2, and she would be deemed to have obtained a provisional appointment to that position as of January 12, 2013, subject to promotional examination procedures. She was awarded back pay from that date.

In its decision, the CSC acknowledged that Wilson's PCQ-2 was still pending, and she claimed she was currently performing duties of a different title. The CSC ordered AS to conduct an expedited review of Wilson's current duties, and stated that if AS found Wilson was performing duties of a different title, she would only be entitled to back pay as an Investigator 2 up to the date of the AS's new decision.

A-0058-18T1

The CSC issued a corrected decision on October 20, 2015, which deleted the statement in the October 9, 2015 decision indicating that Wilson would be given a provisional appointment, subject to promotional examination procedures. The CSC stated that the change was made because the position of Investigator 2 in the Department is not part of the competitive civil service.

On February 23, 2016, AS notified Wilson that based on its review of PCQ-2, her duties were commensurate with those of an Investigator 2. Wilson asked an analyst if she could appeal the PCQ-2 decision to the CSC as part of her ongoing reprisal appeal. The analyst informed her that the reprisal and classification appeals must be filed separately.

Wilson appealed AS's decision on PCQ-2 to the CSC and it was assigned a separate docket number. In January 2017, Wilson withdrew her appeal of AS's decision regarding PCQ-2, stating that she was no longer performing the duties of an Administrative Analyst. She stated that the Department's removal of those duties was the "true issue" in the appeal, and that issue had been raised in the reprisal appeal.

On February 22, 2017, the CSC issued its decision on Wilson's reprisal appeal, and on February 28, 2017, it issued a corrected decision. The CSC found Wilson had not presented "a prima facie case of reprisal." She failed to establish

the Department had taken reprisal actions against her in retaliation for seeking reclassification of her position and filing grievances regarding her PAR.

On March 29, 2017, Wilson filed a motion for reconsideration of the February 28, 2017 decision. On July 24, 2018, the CSC issued its decision on the reconsideration motion. The CSC noted that under N.J.A.C. 4A:2-1.6(b), a party seeking reconsideration must show that the CSC has made a clear, material error, or present new evidence that would change the outcome of the proceeding, and explain why such evidence had not been presented in the original proceeding. Applying that standard, the CSC found that reconsideration of its earlier decision was not warranted.

On September 6, 2018, Wilson filed a notice of appeal. She filed an amended notice of appeal on September 12, 2018. She stated she was appealing from the CSC's decisions of October 20, 2015, February 20, 2017, and July 24, 2018.

II.

The CSC and the Department argue that the court should not consider Wilson's appeal from the October 20, 2015 and February 28, 2017 decisions because Wilson failed to file a notice of appeal from those decisions within the time required by Rule 2:4-1(b). The Rule states that "[a]ppeals from final

decisions or actions of state administrative agencies . . . shall be filed within [forty-five] days from the date of service of the decision or notice of the action taken." Ibid.

As noted, Wilson filed her notice of appeal on September 6, 2018. She contends that her appeal from the October 20, 2015 decision was timely filed because her claims in the reclassification appeal and those in her reprisal action were all part of a single controversy, which was not finally resolved until the CSC's decision on the reprisal appeal.

We recognize that in its decision of October 20, 2015, the CSC stated that its decision "is the final administrative action in the matter [and] [a]ny further review should be presented in a judicial forum." We also recognize that when Wilson raised her claims of retaliation, she was told the matter must be docketed as a separate matter.

However, Wilson, who was representing herself at the time, apparently thought that her reprisal complaints were all part of the dispute over the classification of her position. In this regard, we note that Wilson's retaliation claims were initially submitted to the CSC with regard to the appeal regarding PCQ-1. We conclude that, under the circumstances, the time for appealing the CSC's October 20, 2015 decision should be extended nunc pro tunc.

Moreover, the CSC issued its final decision on the reprisal appeal on February 28, 2017. Rule 2:4-3(b) provides that the time for appeal from a final decision of an administrative agency is tolled "by the timely filing . . . of an application for reconsideration made . . . to the agency pursuant to its rules and practice . . . ." The Rule further provides that "the remaining time shall again begin to run from the . . . date of service of the decision or denial of such application by the agency . . . ." Ibid.

It is undisputed that Wilson filed a timely motion for reconsideration with the CSC on March 29, 2017, which tolled the time for filing the notice of appeal from the February 28, 2017 decision. As stated previously, the CSC issued its final decision on the reconsideration motion on July 24, 2018.

Sixteen days remained for the filing of the notice of appeal from that decision. Wilson did not file her notice of appeal until September 6, 2018. Thus, Wilson did not file a timely appeal from the February 28, 2017 decision, and she did not file a motion to extend the time for appeal.

We are convinced, however, that the time for appeal from the February 28, 2017 decision should be extended. Our court rules allow the time for appeal to be extended for a period not to exceed thirty days for good cause. R. 2:4-4(a).

A-0058-18T1

Wilson's appeal should have been filed on or about August 10, 2018.[1]  She may have assumed that she had forty-five days after the decision on the reconsideration motion to appeal both decisions.  In any event, the notice of appeal was filed within the thirty-day period in which the time for appeal may be extended.  We conclude the time for appealing the CSC's February 28, 2017 decision should be extended pursuant to Rule 2:4-4(a).

III.

On appeal, Wilson argues: (1) the CSC should have awarded her back pay for the entire time she was performing out-of-title duties; (2) the 2017 order failed to address or remedy her second PCQ or the Department's improper removal of her duties; and (3) she presented sufficient evidence to support her reprisal claims.

It is well-established that this court has "a limited role" in reviewing final decisions of state administrative agencies.  In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)).  In reviewing such decisions, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains

---

[1]  We note that if the decision was served by ordinary mail, an additional three days is added to the time within which an action must be taken.  R. 1:3-3.

> substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Carter, 191 N.J. 474, 482-83 (2007) (quoting Mazza v. Bd. of Trustees, 143 N.J. 22, 25 (1995)).]

Moreover, a reviewing court "owes substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007); In re Taylor, 158 N.J. 644, 657 (1999). The Legislature has delegated to the CSC broad authority to enforce the Civil Service Act, and its authority includes classification of employees into appropriate titles. See N.J.S.A. 11A:2-6; N.J.S.A. 11a:3-1 to -8.

A.  Decision on Reclassification Appeal.

Wilson does not challenge the CSC's finding that her position should have been classified as Investigator 2. She argues, however, that the CSC erred by making her retroactive appointment and award of back pay effective as of January 12, 2013. She contends her retroactive appointment should have been made effective in 2004, when she first began to perform the duties. We disagree.

The applicable administrative rules provide that "[w]ithin [ten] days of receipt of the petition [for reclassification of a position], the agency representative shall either notify the petitioner that specific additional

A-0058-18T1

information is required, or forward the petition with [the] organizational chart to the appropriate representative of the [CSC]." N.J.A.C. 4A:3-3.9(c)(4). If the CSC grants the appeal, "the effective date of implementation shall be . . . the pay period immediately after [fourteen] days from the date an appropriate [CSC] representative first received the appeal or reclassification request, or at such earlier date as directed by the Commission . . . ." N.J.A.C. 4A:3-3.9(e)(3)(i).

In its decision of October 20, 2015, the CSC noted that Wilson submitted her PCQ on November 26, 2012, and the Deputy Director of her agency signed the PCQ on December 1, 2012. The Department did not, however, submit the PCQ to the CSC until March 2014.

The CSC found that based on the time periods in the regulations, the appropriate date for implementation of the reclassification was January 12, 2013, which is the beginning of the pay period after the CSC representative first received the appeal or reclassification request. The CSC found there was no basis to implement the reclassification at an earlier date.

The CSC noted that while Wilson claimed she had been performing out-of-title duties since 2009 or 2010, she did not seek reclassification of her position until 2012. The CSC emphasized that "the foundation of position classification, as practiced in New Jersey, is the determination of duties and

A-0058-18T1

responsibilities being performed at a given point in time as verified though an audit or other formal study."  The CSC stated that "classification reviews are based on a current review of assigned duties and any remedy derived therefrom is prospective in nature since duties which may have been performed in the past generally cannot be reviewed or verified."

We conclude that the CSC's decision to implement its reclassification of Wilson's position as of January 12, 2013, was not arbitrary, capricious, or unreasonable.  The CSC"s decision was consistent with the applicable regulations and supported by sufficient credible evidence in the record.  Wilson failed to establish good cause for implementation at an earlier date.

B.  <u>Reprisal Appeal and the Denial of Reconsideration.</u>

Wilson argues that the CSC erred by denying her reprisal appeal and refusing to reconsider that decision.  Again, we disagree.

An appointing authority may not take or threaten action against an employee in retaliation for the employee's lawful disclosure "of information on the violation of any law or rule, governmental mismanagement or abuse of authority.  N.J.S.A. 11A:2-24; N.J.A.C. 4A:2-5.1.  The CSC has determined that to establish a reprisal claim, the employee must show, among other things, a nexus between the employee's "disclosure" and the alleged retaliatory action.

Here, the CSC found Wilson did not present sufficient evidence to support her retaliation claim. She failed to show the required nexus between her disclosures and the alleged retaliatory acts. The CSC noted that the Department had delayed submitting Wilson's first PCQ, but that it had done so in accordance with its internal procedures. The CSC found the delay was not an intentional attempt to sabotage Wilson's reclassification request or retaliation for the filing of the grievances.

The CSC further stated that Wilson had not presented sufficient evidence to support her claim that the Department threated to discipline her because of her disclosures of the alleged wrongful handing of the PCQ and the removal of her out-of-title responsibilities. The CSC found that the evidence did not show that any of the Department's management representatives made threatening statements, as Wilson alleged. The CSC observed that the only "evidence" of the threats was a letter in which Wilson stated that her supervisor had made such threats.

Wilson contends she presented sufficient evidence to support her reprisal claims. She contends the Department improperly rejected her reclassification requests, delayed in submitting PCQ-1 to the CSC, and falsified documents submitted to the CSC regarding the PCQ-1. She contends the Department

14

created an "alternative" PCQ and falsely stated that she had refused to sign it. She claims the Department improperly removed certain out-of-title duties while the PCQ was pending, and threatened her with disciplinary actions for refusing to perform out-of-title work.

The CSC found, however, that these allegations were either not supported by sufficient evidence, or that alleged actions did not constitute unlawful reprisals. We are convinced there is sufficient credible evidence in the record to support the CSC's findings.

Wilson further argues that in its decision on the reprisal appeal, the CSC failed to address her second PCQ and the removal of out-of-title duties during that appeal. She contends the appropriate remedy for the retaliation would have been reclassification to the position of Administrative Analyst 4, back pay for the time she should have been working in that title, and a reprimand to the Department for its threats and retaliatory actions.

These arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). We note, however, that the CSC had no reason to address Wilson's second PCQ, because she had withdrawn her appeal on the that PCQ. Moreover, as noted, the CSC determined Wilson was properly classified in her role as an Investigator 2 and she had been provided back pay to January 12, 2013.

15

We also conclude that the record supports the CSC's determination that reconsideration of the February 28, 2017 decision was not warranted. The CSC found that Wilson's "arguments and [the] documentation provided on reconsideration simply rehash her original position that has already been addressed . . . and do not evidence that the appointing authority's actions were intentional, much less retaliatory or an act of sabotage." There is sufficient credible evidence in the record to support the CSC's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0058-18T1